IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDWIN LINDSEY, #06267-122,<br><br>      Plaintiff,<br><br>v.<br><br>ESTELA DERR,<br><br>      Defendant. | Civil No. 23-00437 SOM-WRP<br><br>ORDER DISMISSING COMPLAINT AND ACTION |

### ORDER DISMISSING COMPLAINT AND ACTION

Before the Court is a Prisoner Civil Rights Complaint ("Complaint"), ECF No. 1, filed by pro se Plaintiff Edwin Lindsey ("Lindsey"). Lindsey alleges that Estela Derr ("Derr"), the warden at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), violated the Eighth Amendment's prohibition against cruel and unusual punishment by threatening his safety.[1] *Id.* at PageID.5. Although Lindsey states that he is bringing this action pursuant to 42 U.S.C. § 1983, *see* ECF No. 1 at PageID.1, the Court liberally construes the Complaint as

---

[1] According to the Federal Bureau of Prisons' online inmate locator, Lindsey is now incarcerated at the Federal Correctional Institution in Sheridan, Oregon. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "06267-122"; and select "Search") (last visited Nov. 1, 2023).

being filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Pettibone v. Russell*, 59 F.4th 449 (9th Cir. 2023) (noting that 42 U.S.C. § 1983 does not apply to alleged violations of the Constitution by *federal* officers).  For the reasons stated below, the Court concludes that Lindsey cannot pursue his claim under *Bivens* and, therefore, DISMISSES the Complaint.  Because amendment of Lindsey's claim would be futile, this dismissal is with prejudice.

## I. SCREENING

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND[2]

On three occasions, Lindsey fell on slippery floors at FDC Honolulu. ECF No. 1-3 at PageID.11. During an incident on June 24, 2021, Lindsey fell outside a shower and injured both his legs. ECF No. 1-5 at PageID.13. According to Lindsey, other inmates also fell in other areas of FDC Honolulu. *Id.*

Lindsey complained to prison officials about the slippery floors near the showers and the fact that FDC Honolulu's commissary sold zori sandals with slippery bottoms. *See* ECF No. 1-1 at PageID.9; ECF No. 1-4 at PageID.12. In a

---

[2] Lindsey's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

written response to Lindsey's request for administrative remedy, Derr stated that shower curtains were in place to prevent water from accumulating on the floor. ECF No. 1-4 at PageID.12.  Derr also stated that shower orderlies are instructed to mop up excess water from the floor and to place caution signs near wet floors.  *Id.* Finally, Derr stated that additional safety measures for the shower area would be explored.  *Id.*

Lindsey appealed to the BOP's regional director.  *See* ECF No. 1-3 at PageID.11.  In a written response, the regional director noted that FDC Honolulu had already taken corrective action.  ECF No. 1-7 at PageID.15.  Specifically, the immediate area outside the showers had been resurfaced with a non-slip surface. *Id.*

Lindsey then appealed to the BOP's Office of General Counsel.  *See* ECF No. 1-8 at PageID.16.  In a written response, the central office also noted that "the institution took corrective actions and the immediate area outside of the showers were resurfaced with a non-slip surface." ECF No. 1-10 at PageID.18.

On October 27, 2023, the Court received the Complaint.  ECF No. 1. Lindsey alleges in the Complaint's one count that Derr violated the Eighth Amendment's prohibition against cruel and unusual punishment by threatening his safety.  *Id.* at PageID.5.  Specifically, Lindsey alleges that there were "unsafe conditions" at FDC Honolulu, Derr was aware of these conditions, and she

4

"refused to address them." *Id.*  Lindsey seeks $500,000 in damages. *Id.* at PageID.8.

### III.  DISCUSSION

Before the merits of Lindsey's claim can be reached, the Court must first decide whether a *Bivens* remedy is available to Lindsey.  *See, e.g.*, *Manansingh v. United States*, Case No. 2:20-cv-01139-DWM, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place.").  Because no such remedy exists, the Complaint and this action must be dismissed.

**A.  Legal Framework for Determining Whether a *Bivens* Remedy Exists**

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by *federal* officers."  *Pettibone*, 59 F.4th at 454 (quoting 42 U.S.C. § 1983) (alteration in original).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights."  *Id.*  In *Bivens*, the Court held that a plaintiff could seek damages from

Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 397. The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment. 442 U.S. 228, 230–31 (1979). Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment by failing to treat severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14, 16–18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809. Since 1980, therefore, the Supreme Court "has 'consistently refused to extend

6

*Bivens* to any new context or new category of defendants.'"[3] *Abbasi*, 582 U.S. at 135 (citation omitted).

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating

---

[3] The Supreme Court has declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[4]  *Pettibone*, 59 F.4th at 454 (citation omitted).

**B.  Lindsey's Claim Presents a New Context**

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743.  A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139.  The Supreme Court has provided a nonexhaustive list of differences that may be "meaningful," including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider.  *Id.* at 139–40.

---

[4] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  142 S. Ct. at 1803.  At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework."  *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022).  The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step. *Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023).  The Court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Lindsey's claims.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus, even when a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context." *Abbasi*, 582 U.S. at 147. In other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 61 F.4th at 669 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles. In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property. 142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, Lindsey's Eighth Amendment claim differs meaningfully from both the Fourth Amendment claims in *Bivens* and the Fifth Amendment claim in *Davis* because Lindsey's claim is based on an entirely different constitutional right. *See*

9

*Abbasi*, 582 U.S. at 148 (concluding that claims arose in new context because "[t]he constitutional right [was] different"). Lindsey's claim also differs meaningfully from the claims in *Carlson*. Although Lindsey's claim, like the claims in *Carlson*, is based on the Eighth Amendment's prohibition against cruel and unusual punishment, the mechanism of injury in this case differs from that in *Carlson*—that is, a threat to Lindsey's safety as opposed to a denial of adequate medical care.[5] *See Cohen v. United States*, 640 F. Supp. 3d 324, 338 (S.D.N.Y. Nov. 14, 2022) (concluding that Eighth Amendment conditions of confinement claim presented new context).

Thus, Lindsey's Eighth Amendment threat-to-safety claim arises in a new context. *See Marler v. Derr*, CIV NO. 22-00088 JMS-WRP, 2023 WL 2614314, at *5 (D. Haw. Mar. 23, 2023) ("[Plaintiff's] Eighth Amendment threat to safety claims arise in a new context."); *Zaragosa-Solis v. Gutierrez*, No. CV 22-00562-TUC-JCH, 2023 WL 2444998, at *4 (D. Ariz. Feb. 21, 2023) ("Plaintiff's Eighth Amendment threat-to-safety claim arises in a new context because it is substantially and meaningfully different from the three types of cases in which the Supreme Court has recognized a *Bivens* remedy."); *Carey v. Von Blanckensee*, 515

---

[5] Even claims alleging a denial of adequate medical care can present a new context. *See Villegas-Escobar v. Kwon*, CIV. NO. 22-00087 JMS-WRP, 2023 WL 2574417, at *6 (D. Haw. Mar. 20, 2023) (concluding that the "nature and severity" of plaintiff's claims meaningfully differed from those in *Carlson*); *Lu v. Kwon*, CIV. NO. 22-00122 JMS-RT, 2023 WL 2456207, at *5–6 (D. Haw. Mar. 10, 2023) (same).

10

F. Supp. 3d 1051, 1057 (D. Ariz. 2021) ("Plaintiff's Eighth Amendment [threat-to-safety] claim arises in a new context because it is substantially and meaningfully different from the three types of cases in which the Supreme Court has recognized a *Bivens* remedy."), *appeal dismissed*, 2021 WL 2026260 (9th Cir. Mar. 11, 2021); *Hoffman v. Preston*, Case No. 1:16-cv-01617-LJO-SAB (PC), 2019 WL 5188927, at *5 (E.D. Cal. Oct. 15, 2019) ("Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth Amendment claim in *Carlson* because Plaintiff's claim arises out of allegations that a correctional officer offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, not failure to provide medical care."), *report and recommendation adopted*, 2020 WL 58039 (E.D. Cal. Jan. 6, 2020), *rev'd and remanded*, 26 F.4th 1059 (9th Cir. 2022), *superseded*, 2022 WL 6685254 (9th Cir. Oct. 11, 2022), *and opinion withdrawn*, 50 F.4th 927 (9th Cir. 2022), *and aff'd*, 2022 WL 6685254 (9th Cir. Oct. 11, 2022).

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is relevant to deciding whether a case presents a new context. *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. at 1803 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'") (citation omitted). As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for Lindsey's claim, including the existence

of the Federal Bureau of Prisons' administrative remedy program.  Because this factor was not considered by the Supreme Court in *Carlson*, this is another reason that Lindsey's claim arises in a new context.  *See Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original); *Kaneakua v. Derr*, Case No. 22-cv-00201-DKW-WRP, 2023 WL 2539952, at *6 (D. Haw. Mar. 16, 2023) (dismissing claim against prison official in part because the BOP's administrative remedy program provides an alternative remedy); *Hurst v. Dayton*, Case No. 22-cv-00171-DKW-RT, 2023 WL 2526460, at *5 (D. Haw. Mar. 15, 2023) (same).

For all these reasons, Lindsey's claim is meaningfully different from the claims in *Bivens*, *Davis*, and *Carlson*, and the Court must proceed to step two.

### C.  Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1798 (citation omitted).  Thus, at step two, "[a] court faces only one question: whether there is *any* rational reason (even one) to

think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1803 (citation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted). In conducting this analysis, courts must ask "'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* at 1805 (citation omitted). If there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted). This will be the outcome in "most every case." *Id*. at 1803; *see Marquez v. C. Rodriguez*, 81 F.4th 1027, 1032–33 (9th Cir. 2023) (noting that the special factors analysis sets a "low bar"); *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) ("Essentially then, future extensions of *Bivens* are dead on arrival.").

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804. It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed. *Id.* Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to

13

secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Here, the Court cannot recognize a *Bivens* remedy because Lindsey had or has alternative remedies available to him. While Lindsey was incarcerated at FDC Honolulu, he had available to him the Federal Bureau of Prisons' alternative remedial program. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Williams v. Verna*, No. 19-15978, 2023 WL 5221062, at *2 (9th Cir. Aug. 15, 2023) (stating that the BOP's administrative grievance procedure "provides an alternative remedial structure that precludes *Bivens* relief"); *Hoffman*, 2022 WL 6685254, at *1 ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original). Indeed, after Lindsey alerted prison officials to his concerns through the administrative remedy program, areas outside the showers were resurfaced with a nonslip surface. *See* ECF No. 1-7 at PageID.15.

Another special factor that counsels against recognizing a *Bivens* remedy in this new context is that Congress provided an alternative remedy through the Federal Tort Claims Act ("FTCA").  *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *MT v. United States*, Case No. 3:22-cv-00171-BEN-KSC, 2023 WL 2468948, at *13 (S.D. Cal. Mar. 10, 2023) ("[T]he alternative remedy available through the FTCA constitutes a special factor that forecloses Plaintiffs' *Bivens* claim."); *Prescott v. United States*, Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023) ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson v. Garland*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022) ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action.").  "The availability of these alternative remedies is enough for [the Court] to find that Congress—not the judiciary—is best suited to address [Lindsey's] interests." *Marquez*, 81 F.4th at 1033.

This Court cannot "second-guess" the judgments made by Congress and the Executive "by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807; *see also MT*, 2023 WL 2468948, at *13; *Van Gessel v. Moore*, No. 1:18-cv-01478-DAD-GSA-PC, 2020 WL 905216, at*11 (E.D. Cal. Feb. 25, 2020) ("Since Plaintiff has or had alternative remedies available to him, this special factor counsels against extending a *Bivens* damages remedy to Plaintiff's Eighth Amendment failure to protect claim."), *report and recommendation adopted*, 2020 WL 1812150 (E.D. Cal. Apr. 9, 2020). As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case does not present the unusual circumstances required to recognize a *Bivens* remedy.

## IV.  CONCLUSION

1. The Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because Lindsey's claim arises in a new context and special factors weigh against recognizing a new *Bivens* remedy.

2. This dismissal is with prejudice because amendment would be futile. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).

3. This dismissal may constitute a strike under 28 U.S.C. § 1915(g).

4. The Court CERTIFIES that an appeal from this Order would be frivolous and, therefore, not taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (stating that indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

5. The Court VACATES its Order Granting Application to Proceed In Forma Pauperis, ECF No. 3, and Lindsey's Application to Proceed In Forma Pauperis, ECF No. 2, is DENIED as moot. The FCI Sheridan Warden is no longer required to calculate, collect, and remit an initial partial payment or subsequent monthly payments associated with this action.

6. The Clerk of Court is DIRECTED to (1) close the case and enter judgment in favor of Defendant and (2) serve a copy of this order on the FCI Sheridan Warden and Financial Office and/or the Bureau of Prisons.

IT IS SO ORDERED

DATED: November 1, 2023, at Honolulu, Hawaii.



/s/ Susan Oki Mollway
Susan Oki Mollway
Senior United States District Judge